**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**DAWN T.,**

                                        **Plaintiff,**

        **vs.**                                                            **8:19-cv-619**
                                                                              **(MAD)**

**ANDREW SAUL,**
*Commissioner of Social Security*,

                                        **Defendant.**

_____

**APPEARANCES:**                                    **OF COUNSEL:**

**LAW OFFICES OF**                              **JUSTIN M. GOLDSTEIN, ESQ.**
**KENNETH HILLER, PLLC**                **KENNETH R. HILLER, ESQ.**
6000 North Bailey Avenue
Suite 1A
Amherst, New York 14226
Attorneys for Plaintif

**SOCIAL SECURITY ADMINISTRATION**        **ANDREEA L. LECHLEITNER, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza
Room 3904
New York, New York 10278
Attorneys for the Commissioner

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On August 3, 2016, Plaintiff Dawn T. filed an application for Supplemental Security

Income ("SSI") and Social Security Disability Insurance Benefits ("DIB"). *See* Dkt. No. 8,

Administrative Transcript ("Tr.") at 182. On September 21, 2016, Plaintiff's claims were initially

denied. *See id.* at 77–96. Plaintiff made a timely request for a hearing before an Administrative

Law Judge ("ALJ"), who issued an unfavorable decision on June 26, 2018. *See id.* at 10–24. Plaintiff made a request to review the unfavorable decision, and on March 27, 2019, the Appeals Council denied Plaintiff's request to review. *See id.* at 1–6.

Plaintiff commenced this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) seeking review of the Commissioner's unfavorable decision. Currently before the Court are the parties' briefs for judgment on the pleadings. *See* Dkt. Nos. 12, 13.

## II. BACKGROUND

Plaintiff's date of birth is December 23, 1972, which made her forty-three years old at the time she filed for SSI and DIB on August 3, 2016. *See* Tr. at 182, 207. Plaintiff completed high school at the age of thirty-six. *See id.* at 36. At the time of the hearing, Plaintiff had completed college courses at SUNY Canton, with a major in finance. *See id.* at 38. Plaintiff indicated that she struggled in her most recent semester at SUNY Canton, obtaining a grade point average of 2.70. *See id.* at 41. Plaintiff stated at the hearing that she had only attended classes in person for one year prior to her application for SSI and DIB. *See id.* Plaintiff also reported that she was currently enrolled in online classes. *See id.* at 39–40.

In 1998, Plaintiff received job training, specifically as a certified nursing assistant. *See id.* at 35. For the fifteen years prior to her alleged onset date of disability, Plaintiff worked as a server, waitress, and hostess at multiple restaurants, beginning in 2003. *See id.* at 34–36. These restaurants included the Hanover Diner, New River View, Hronis Brothers' Baker's Restaurant, and Applebee's. *See id.*

Plaintiff lived with her boyfriend and two-year old child at the time of the hearing. *See id.* at 47. Plaintiff indicated that her boyfriend was at home the majority of the time, and was diagnosed with intermittent explosive disorder. *See id.* at 48. Plaintiff indicated that she might

lift her daughter from the tub, but feared dropping her, and therefore had her boyfriend lift the child into the car. *See id.* at 49–50. Plaintiff further indicated that she was with her daughter "all the time," and changed her diapers, albeit it with difficulty. *See id.* at 53. Plaintiff also participated in other household chores, including emptying the dishwasher. *See id.* at 45. In a typical day, Plaintiff walked around, took her pain medication, drank coffee, and watched the news. *See id.* at 47. She stated that she lays down when her daughter rests. *See id.*

At the time of Plaintiff's hearing, she had three prior back surgeries: two laminectomies in 2002 and 2004, and a left L3-L4 microdiscectomy in 2016. *See id.* at 38–39. Plaintiff also stated that she had a cervical fusion around 2006. *See id.* at 39. Plaintiff indicated that she is right-handed, and has trouble reaching out with her left hand, but not her right. *See id.* at 43. Plaintiff said that she could reach out directly in front of herself with her non-dominant left hand, but found herself using her right side more than her left. *See id.* at 44. Plaintiff described experiencing a shooting pain when she reached out with her left hand. *See id.* at 43. Plaintiff described being able to reach overhead, but did not do so on a regular basis, and was unsure whether she could continually repeat that behavior. *See id.* at 45. Plaintiff described being able to type a paragraph or two at a time on a computer, but would then experience arm and shoulder pain, as well as numbness in her left arm. *See id.* at 46, 55. Plaintiff indicated that, throughout the day, she "rotates" between sitting and standing. *See id.* at 47. Plaintiff described experiencing numbness in her hands on a daily basis that prevented her from using her hands at those times, and experienced stiffness in her neck and back. *See id.* at 51. Plaintiff indicated that, after this numbness occurs, she has no control of her hands and has dropped the items she was holding. *See id.* at 55.

In a decision dated June 26, 2018, the ALJ determined that Plaintiff was not disabled under the Social Security Act. *See id.* at 10–24. Plaintiff timely filed a request for review by the Appeals Council, *see id.* at 7–9, and the Appeals Council denied her request for review, rendering the ALJ's decision the Commissioner's final decision. *See id.* at 1–6. In her decision, the ALJ found the following: (1) Plaintiff had not engaged in substantial gainful activity since September 30, 2015; (2) Plaintiff's severe impairments include back impairment, neck impairment, shoulder impairment, and obesity; (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments; (4) Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with limitations including being able to sit for six hours in an eight-hour day and for thirty minutes at a time, stand and/or walk for two hours in an eight-hour day and for fifteen minutes at a time, frequently reach in all directions other than overhead, frequently handle, finger, and feel, occasionally reach overhead, and frequently rotate, extend, and flex her cervical spine; (5) Plaintiff's RFC renders her not capable of performing past relevant work; and (6) considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See id.* at 15–23. Accordingly, the ALJ found that Plaintiff is not disabled as defined in the Social Security Act. *See id.* at 23–24.

Plaintiff commenced this action for judicial review of the denial of her claims by the filing of a complaint on May 24, 2019. *See* Dkt. No. 1. The parties have filed briefs for judgment on the pleadings. *See* Dkt. Nos. 12, 13.

## III. DISCUSSION

**A.     Standard of Review**

A person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  There is a five-step analysis for evaluating disability claims:

> In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)) (other citation omitted).  "The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step." *Id.* (citation omitted).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
*Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even
where substantial evidence may support the plaintiff's position and despite that the court's
independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*,
805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.
1982)) (other citations omitted). In other words, this Court must afford the Commissioner's
determination considerable deference, and may not substitute "its own judgment for that of the
[Commissioner], even if it might justifiably have reached a different result upon a de novo
review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)
(citation omitted).

**B.     The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in
substantial gainful activity since September 30, 2015, the alleged onset date. *See* Tr. at 15. At
step two, the ALJ concluded that Plaintiff had the following severe impairments: back
impairment, neck impairment, shoulder impairment, and obesity. *See id.* at 15–17. At step three,
the ALJ determined that Plaintiff did not have an impairment or combination of impairments that
functionally equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P,
Appendix 1. *See id.* at 17. The ALJ then found that Plaintiff

> has the residual functional capacity to perform sedentary work as
> defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant
> is able to sit for six hours in an eight-hour day and for 30 minutes at
> a time, stand and/or walk for two hours in an eight-hour day and for
> 15 minutes at a time, frequently reach in all directions other than
> overhead and frequently handle, finger, and feel. The claimant is

> able to occasionally reach overhead.  She is able to frequently
> rotate, extend, and flex her cervical spine.

*Id.* at 17–21.  At step four, the ALJ found that Plaintiff was unable to perform any past relevant

work.  *See id.* at 22.  At the fifth and final step of the analysis, the ALJ solicited the testimony of a

vocational expert.  *See id.* at 22–23.  The vocational expert testified that a hypothetical individual

of Plaintiff's age, with her education, past relevant work experience, and RFC (as described

above) could perform the representative occupations of document preparer, charge account clerk,

and semiconductor bonder.  *See id.*  The ALJ relied on this testimony to determine that Plaintiff

was not disabled as defined by the Social Security Act.  *See id.* at 23–24.

**C.     Analysis**

Plaintiff contends that the ALJ's determination denying her SSI and DIB application

should be remanded back to the Commissioner for the following reasons: (1) the RFC finding is

unsupported by substantial evidence; and (2) the ALJ's consistency finding is unsupported by

substantial evidence.  *See* Dkt. No. 12 at 11–25.

**1. *Plaintiff's RFC***

Plaintiff contends that "the evidence purportedly relied upon by the ALJ does not support

the specific findings indicated in the RFC assessment."  Dkt. No. 12 at 12.  Plaintiff objects to the

manner in which the ALJ weighed the available medical opinions of Dr. Elke Lorensen ("Dr.

Lorensen"), nurse practitioner Georgia Blackburn ("NP Blackburn"), as well as other evidence in

the record, including a statement made by Dr. Bruce Tranmer ("Dr. Tranmer"), Plaintiff's

neurosurgeon, Plaintiff's treatment records, and Plaintiff's routine daily activities.  *See id.* at

11–24.

7

Although an ALJ's conclusion "may not perfectly correspond with any of the opinions of medical sources cited in [the] decision," an ALJ is "entitled to weigh all of the evidence to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence.  The trier of fact has the duty to resolve that conflict")).

The treating physician rule states that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)).  Medical opinions given by providers who are not acceptable medical sources are not subject to the treating physician rule.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  "'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Asrtue*, 298 Fed. Appx. 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a)).  Nurse practitioners are not "acceptable medical sources."  Social Security Ruling ("SSR") 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006).

When an ALJ is considering how best to weigh the opinion of a non-acceptable medical source and other non-treating medical opinions, the ALJ must consider a number of factors, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict

8

the opinion.  *See* SSR 06-03P, 2006 WL 2329939, at *4; *see also* 20 C.F.R. § 404.1527(c).  After

accounting for these factors, the ALJ should generally explain the weight given to opinions from

non-acceptable medical sources or at least "ensure that the discussion of the evidence in the

determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's

reasoning, when such opinions may have an effect on the outcome of the case."  *See* SSR 06-03P,

2006 WL 2329939, at *6.

### a.  NP Blackburn

Plaintiff argues that the ALJ should have given more weight to the assessments of Georgia

Blackburn, a nurse practitioner, because she had a longstanding relationship with Plaintiff and

reviewed the treatment notes of Plaintiff's other practitioners.  *See* Dkt. No. 12 at 12–14.  Under

the Commissioner's regulations applicable to Plaintiff's claim, nurse practitioners are not

considered "acceptable medical sources," and their opinions are therefore not "entitled to any

particular weight[.]"  *Wider v. Colvin*, 245 F. Supp. 3d 381, 389 (E.D.N.Y. 2017) (quotations

omitted).  Nevertheless, an ALJ should consider evidence from "other sources," such as nurse

practitioners, on important issues like the severity of an impairment and any related functional

effects.  *See* SSR 06-3p, 2006 WL 2329939, at *2; *Glena v. Colvin*, No. 1:15-CV-00810, 2018

WL 739096, *3 (W.D.N.Y. Feb. 6, 2018) ("Nurse practitioners are defined as 'other sources' under

the Regulations; they do not constitute 'acceptable medical sources' . . . .  Nevertheless, SSR

06-3p recognizes that 'other source' opinions are important and should be evaluated on key issues

such as impairment severity and functional effects, along with the other relevant evidence in the

file") (internal quotation omitted).  An ALJ may not disregard opinion evidence from a nurse

practitioner or "other source" solely because it was not authored by an acceptable medical source.

*See Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) (holding that ALJ

erred in disregarding opinion of social worker simply because it was the opinion of an "other source," and "not on account of its content or whether it conformed with the other evidence in the record").

The Court has reviewed the record, and finds that the ALJ properly afforded NP Blackburn's opinion very little weight.  As noted above, NP Blackburn's opinion was not entitled to any special weight. *See Wider*, 245 F. Supp. 3d at 389.  Furthermore, the ALJ articulated the specific reasons she decided to assign little weight to NP Blackburn's assessments.  The ALJ first stated that "the claimant does not have a medically determinable mental impairment, therefore, Ms. Blackburn's opinion regarding limitations relating to psychiatric impairment are rejected."  Tr. at 21.  Plaintiff states that the ALJ specifically rejected Plaintiff's non-exertional limitations for this reason, but that "NP Blackburn does not attribute any of Plaintiff's nonexertional limitations to a mental impairment."  Dkt. No. 12 at 14.  However, NP Blackburn indicated that Plaintiff would be "unable to meet competitive standards" with respect to "complet[ing] a normal workday and workweek without interruptions from psychologically based symptoms."  Tr. at 394.  While Plaintiff argues that "the ALJ's reasoning that physical impairments can only cause exertional limitations is contradicted by the Rulings," Dkt. No. 12 at 15, the Court cannot reconcile that argument to fit the ALJ's interpretation of NP Blackburn's opinion regarding psychiatric impairments.  Therefore, Plaintiff's argument that "the ALJ's conclusion . . . was a factual mistake" fails.  Dkt. No. 12 at 14.

The ALJ next stated that she gave little evidentiary weight to NP Blackburn's assessment because "[t]he claimant testified that she is able to lift and carry her two-year-old child. Therefore, Ms. Blackburn's opinion that the claimant is only able to rarely lift ten pounds is rejected."  Tr. at 21.  Plaintiff argues that "the ALJ's reasoning is based upon a mischaracterization

of the testimony and is not a valid reason." Dkt. No. 12 at 15. Despite Plaintiff's argument that the ALJ did not acknowledge that the child's father helped with childcare, *see id.*, Plaintiff did, in fact, testify at the hearing that she can and does lift her child from the tub. *See* Tr. at 49–50.

The ALJ also rejected NP Blackburn's assessment that Plaintiff needed fifteen minute breaks every hour because this opinion was not supported by any objective evidence. *See* Tr. at 21. Plaintiff argues that the ALJ's assessment was conclusory, and that there is no medical evidence to corroborate this assessment. *See* Dkt. No. 12 at 17–18. As the Commissioner argues, NP Blackburn's opinion "is not supported by any objective evidence from Nurse Blackburn or her colleagues at Community Health Center, which revealed that plaintiff had normal range of motion of her spine, and denied numbness and tingling (Tr. 244, 247). These portions of her opinion were inconsistent with the findings that plaintiff's gait was normal (albeit sometimes slowed), her reflexes were symmetrical, straight leg raising was negative, and she was consistently in no acute distress (Tr. 248, 325, 329, 333, 336–37)." Dkt. No. 13 at 13–14. Therefore, the Court finds that the ALJ's determination that this assessment is unsupported by the record as a whole was appropriate. *See Domm v. Colvin*, 579 Fed. Appx. 27, 28 (2d Cir. 2014) (holding that the ALJ may discount the opinion of a treating source when the opinion is internally inconsistent with his own treatment notes, other medical evidence in the record, and the plaintiff's testimony).

The ALJ also rejected NP Blackburn's manipulative limitations because Plaintiff "testified that she is able to type, use a computer, and change her child's diapers, which demonstrates that she retains good use of both hands for fine and gross manipulation. . . . [Plaintiff's] hand and finger dexterity was intact [during the consultative examination] and she retained full grip strength bilaterally. Moreover, the EMG and nerve conduction study performed in 2013 showed no evidence of cervical radiculopathy or carpal tunnel syndrome." Tr. at 21. Plaintiff again

contends that the ALJ failed to acknowledge other treatment notes or Plaintiff's testimony.  *See* Dkt. No. 12 at 16.  The Court finds that the ALJ's determination that this assessment is unsupported by the record as a whole was appropriate, because the ALJ made specific references to the record to support the rejection of these limitations, including Plaintiff's treatment records and testimony.  *See Micheli v. Astrue*, 501 Fed. Appx. 26, 28–29 (2d Cir. 2012) (holding that the ALJ did not err in declining to afford controlling weight to the treating physician, where the opinion was internally inconsistent and inconsistent with other evidence in the record).

Plaintiff also claims that the ALJ's failure to provide "any rationale as to why she rejected NP Blackburn['s] assessment that Plaintiff would likely be absent more than 4 days per month on average due to her impairments or treatment" requires reversal.  Dkt. No. 12 at 19.  The case law that Plaintiff cites to support her position is distinguishable from the present matter.  For example, in *Lesterhuis v. Colvin*, the plaintiff's treating physician, whose opinion had controlling weight, stated that the plaintiff would likely miss more than four days a month of work.  *See Lesterhuis v. Colvin*, 805 F.3d 83, 88 (2d Cir. 2015).  Furthermore, another non-doctor therapist agreed with that treating physician's conclusion.  *See id.*  When "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."  *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).  Moreover, as the ALJ gave little weight to the opinion of NP Blackburn, the Court finds this failure of the ALJ was not a clear error.  *But see Chmura v. Berryhill*, No. 16-CV-205, 2017 WL 1829728, *3 (W.D.N.Y. May 8, 2017) (remanding a case where the ALJ afforded significant weight to the medical opinion of a doctor, but failed to provide an explanation for not incorporating into the RFC a limitation regarding absences).

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence regarding the weight provided to the opinion of NP Blackburn.

### b. Substantial Evidence to Support the ALJ's RFC Finding

Plaintiff argues that the remaining evidence does not support the ALJ's RFC finding. *See* Dkt. No. 12 at 19–24. Plaintiff contends that the opinion of Dr. Elke Lorensen, a consultative examiner, is "too vague and incomplete to constitute substantial evidence supporting the RFC finding." *Id.* at 20. Plaintiff similarly argues that the opinion of Dr. Bruce Tranmer, Plaintiff's treating neurosurgeon, is incomplete because it "does not address the ability to handle, finger, and feel." *Id.* at 23.

As stated previously, an ALJ is "entitled to weigh all of the evidence to make an RFC finding that was consistent with the record as a whole." *Matta*, 508 Fed. Appx. at 56. The ALJ has the responsibility for resolving conflicts in the evidence. *See Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve"). Here, the Court finds Plaintiff's arguments to be without merit.

Plaintiff argues that the ALJ improperly substituted her own opinion for that of a physician, and therefore committed legal error. *See* Dkt. No. 12 at 21. However, the ALJ relied upon the opinions of multiple physicians and treatment records throughout her decision. In the ALJ's decision, she gave great weight to the opinion of Dr. Lorensen. *See* Tr. at 20. "State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole." *Cobb v. Comm'r of Soc. Sec.*, No. 5:13-cv-591, 2014 WL 4437566, *6 (N.D.N.Y. Sept. 9, 2014) (quoting *Leach ex. Rel. Murray v. Barnhart,* No. 02 Civ. 3561, 2004 WL 99935, *9 (S.D.N.Y. Jan. 22, 2004)). As Dr. Lorensen's opinion "may constitute substantial evidence[,]" the

ALJ may properly rely on it as long as the opinion is "consistent with the record as a whole." *Id.*

According to the ALJ, Dr. Lorensen's opinion was "supported by Dr. Lorensen's findings upon

examining the claimant." Tr. at 20.  Specifically, on September 13, 2016, Dr. Lorensen evaluated

Plaintiff, finding that she had "no limitations for standing, walking, sitting, or handling small

objects, moderate limitations for bending, lifting, and reaching, and mild limitations for turning

her head." *Id.*  Dr. Lorensen supported this conclusion by noting Plaintiff's gait was normal, she

was able to squat at 30%, she used no assistive device, she needed no help changing for the

examination or getting on and off the examination table, and she was able to rise from a chair

without difficulty.  *See id.*  The ALJ also acknowledged that Dr. Lorensen found that Plaintiff had

limited range of motion of her lumbar and cervical spine, as well as diminished sensation in her

left leg, but no strength deficits in her lower extremities, was unimpaired in her upper extremities,

and straight leg raising was negative.  *See id.* at 20–21.  Plaintiff's hand and finger dexterity was

intact and she retained full grip strength bilaterally.  *See id.* at 21.

Furthermore, as the Commissioner argues, courts in this Circuit have found that opinions

of mild and moderate limitations support an RFC for light work, "which is even more physically

demanding than the sedentary work to which the ALJ restricted plaintiff."  Dkt. No. 13 at 8;

*Stacey v. Comm'r of Soc. Sec.*, No. 09-CV-638, 2011 WL 2357665, *6 (N.D.N.Y. May 20, 2011)

(holding that moderate limitations in lifting, prolonged sitting, prolonged standing and walking

supported RFC for light work).  Therefore, contrary to Plaintiff's assertions, the Court finds that

the ALJ properly relied on Dr. Lorensen's opinion for the purposes of the RFC determination.

Dr. Lorensen's opinion was also consistent with other evidence in the record, including the

October 2016 statement made by Dr. Tranmer, Plaintiff's neurosurgeon, to which the ALJ gave

some weight. *See* Tr. at 20.[1]  The ALJ assigned some weight to the opinion of Dr. Tranmer

because "it is a treating source opinion from a specialist and is supported by the clinical findings

documented in the claimant's treatment records." *Id.*  Dr. Tranmer advised Plaintiff, after her

surgery, "not to lift more than ten pounds and not to bend at the waist to lift.  He did not report

any other limitations." *Id.*  The Court finds that it was reasonable for the ALJ to conclude that Dr.

Tranmer found no other limitations because of the absence of any indication to the contrary.  *See,*

*e.g.*, *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d. Cir. 1983) ("The Secretary is entitled to rely

not only on what the record says, but also on what it does not say").  Furthermore, the ALJ

referenced multiple examples to support her determination that Dr. Tranmer's opinion was

consistent with the clinical findings documented in Plaintiff's treatment records.  *See* Tr. at 20.

For example, in November 2016, only one month after Plaintiff's surgery, her gait was non-

antalgic and she had no strength deficits in her lower extremities.  *See id.*  In May 2017, Plaintiff's

gait was non-antalgic and she was able to walk on her heels and toes, having no sensory or

strength deficits in her lower extremities, and with normal reflexes.  *See id.*  In August 2017, Dr.

Tranmer made the same notations.  *See id.*  In May 2018, Plaintiff's gait was normal, and she had

full range of motion of her cervical spine and her lumbar spine.  *See id.*  Therefore, the Court finds

that the ALJ properly evaluated the opinion of Dr. Tranmer for the purposes of the RFC finding.

The Court finds that, with respect to Plaintiff's treatment notes, substantial evidence

supports the ALJ's evaluation of Plaintiff's RFC.  The ALJ acknowledged that Plaintiff had

complained of back and bilateral leg pain after her surgery, but the ALJ did not find this pain to be

so extreme as to preclude all work.  *See id.* at 19.  The ALJ noted that Plaintiff was referred to

---

[1] As the Commissioner noted, the ALJ wrote that Dr. Tranmer "would not provide a
medical source statement and recommended that the claimant have a functional capacity
evaluation." *Id.*

physical therapy, but as of August 2017, had not gone.  *See id.*  Furthermore, as the Commissioner

notes, Plaintiff was offered, but declined, a nerve root injection.  *See id.* at 350.  A claimant

declining treatment can be evaluated by an ALJ when determining whether a claimant has a

disabling impairment.  *See, e.g.*, *Kleiman v. Barnhart*, No. 03 Civ. 6035, 2005 WL 820261, *10

(S.D.N.Y. Apr. 8, 2005).  Moreover, Plaintiff continued to request only pain medications.  *See* Tr.

at 19.  As the ALJ highlighted, there "is some suggestion in the record that the claimant was

transferring her pain medications to her boyfriend and he was selling them."  *Id.*  Evidence of drug

seeking behavior can be considered to evaluate a claimant's subjective complaints.  *See Anthony v.

Colvin*, No. 14-CV-0848, 2015 WL 5772980, *12–13 (N.D.N.Y. Sept. 30, 2015).  The Court

finds that these facts were appropriately incorporated into the ALJ 's assessment of Plaintiff's

subjective characterization of the severity of her symptoms, as well as to support her RFC.  *See

Guerrero v. Comm'r of Soc. Sec.*, No. 16-cv-3290, 2017 WL 4084051, *9 (S.D.N.Y. Sept. 13,

2017).

In further support of her RFC determination, the ALJ also relied on Plaintiff's reported

activities of daily living.  *See* Tr. at 20.  "[T]he ALJ properly relied on Plaintiff's activities as a

factor in her overall evaluation of the medical opinion evidence in and formulating Plaintiff's

RFC."  *Cummings v. Comm'r of Soc. Sec.*, No. 3:17-CV-0631, 2018 WL 2209204, *8 (N.D.N.Y.

May 14, 2018).  The ALJ noted that Plaintiff informed the psychological consultative examiner

that she "is able to dress, bathe, and groom herself, cook, prepare food, clean, do laundry, shop,

manage money, drive, and use public transportation."  Tr. at 19.  Plaintiff also informed the

physical consultative examiner that she "is able to cook, cleans with help, does laundry, shops,

showers, and dresses herself daily."  *Id.*  Plaintiff was enrolled in college classes and pursuing a

degree in finance online, though she reported to be struggling and earned a 2.07 GPA.  *See id.* at

19–20.  Plaintiff "is able to type and use a computer" and "changes [her] child's diaper."  *Id.* at 20.
The ALJ concluded that Plaintiff's reported activities "suggest that she retains the ability to
perform at least sedentary exertional work and has no significant limitations for using her hands
for fine or gross motor activities."  *Id.*  Based on the foregoing, the Court finds that ALJ did not
err in her reliance on Plaintiff's activities of daily living in formulating her RFC determination.
*See Cummings*, 2018 WL 2209204, at *8.

Plaintiff alleges that the ALJ "does not discuss any treatment notes or other evidence
within Plaintiff's treatment history that has vocational or functional relevance," Dkt. No. 12 at 22,
and that "the ALJ essentially averaged the opinions of no limitation and occasional abilities to
come up with frequent limitations."  *Id.* at 24.  Contrary to Plaintiff's assertions, the ALJ's RFC
finding for a range of sedentary work is supported by the opinions of Drs. Lorensen and Tranmer,
Plaintiff's treatment records, and her routine daily activities.  Moreover, it was reasonable for the
ALJ to find the opinions of Drs. Lorensen and Tranmer more persuasive than the opinion of NP
Blackburn.

### 2.  *ALJ's Determination that Plaintiff's Subjective Complaints Were Not Consistent*

Plaintiff claims that the ALJ committed reversible error because the "ALJ's incomplete
citation to activities fails to show how Plaintiff could perform activities in a work environment on
a competitive basis, and the complete and accurate testimony is consistent with debilitating
limitations."  Dkt. No. 12 at 25.

An ALJ must evaluate the intensity and persistence of a claimant's symptoms and any
functional limitations attendant to them in order to determine how they affect a claimant's capacity
for work.  *See* 20 C.F.R. § 416.929(c)(1).  Since symptoms such as pain sometimes suggest a
greater severity of impairment than can be shown by objective medical evidence alone, the ALJ

must carefully consider any other information submitted by the claimant for its consistency with any and all relevant evidence.  *See* 20 C.F.R. § 416.929(c)(3).  A claimant's statement(s) about the intensity and persistence of a particular symptom, such as pain, or about the limiting effects the symptoms have on his or her ability to work will not be rejected solely because the available objective medical evidence does not substantiate a claimant's statement(s).  *See* 20 C.F.R. § 416.929(c)(2).  "However, the ALJ is not obliged to accept without question the credibility of such subjective evidence."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (citing *Martone v. Apfel,* 70 F. Supp. 2d 145, 151 (N.D.N.Y. 1999)) (internal citation omitted). "When such [statements are] consistent with and supported by objective clinical evidence demonstrating that [the] claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight."  *Crysler v. Astrue*, 563 F. Supp. 2d 418, 439-40 (N.D.N.Y. 2008) (citations omitted).

"However, if a claimant's statements about his or her symptoms are not substantiated by the objective medical evidence, the ALJ must consider the other evidence and make a finding on the credibility of the individual's statements."  *Chicocki v. Astrue*, 534 Fed. Appx. 71, 76 (2d Cir. 2013) (citation omitted).  In doing so, the ALJ should consider the following:

> (i) [the claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms;

18

(vi) Any measures [the claimant] use[s] or ha[s] used to relieve pain or other symptoms . . . ; and

(vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

*Id.* (citing 20 C.F.R. § 416.929(c)(3)).  In doing so, the ALJ will "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence."  20 C.F.R. § 416.929(c)(4).  The claimant's symptoms will "be determined to diminish [their] capacity for basic work activities . . . to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 416.929(c)(4).

"An ALJ rejecting subjective testimony 'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'"  *Abdulsalam v. Comm'r of Soc. Sec.*, No. 5:12-CV-1631, 2014 WL 420465, *6 (N.D.N.Y. Feb. 4, 2014) (quoting *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998)) (other citations omitted).  Further, the Agency rules provide that,

> [i]n evaluating an individual's symptoms, it is not sufficient for [the] adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent."  It is also not enough for [the] adjudicators simply to recite the factors described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3P, 2017 WL 5180304, at *10.

   To the extent that Plaintiff is claiming that the ALJ failed to sufficiently support her consistency determination, the Court disagrees.  *See* Dkt. No. 12 at 24–25.  Plaintiff first asserts that the ALJ did not provide an accurate or complete picture of Plaintiff's daily activities, arguing that these activities "were actually very limited."  *See id.* at 24.  As the Court outlined above, Plaintiff's descriptions of her daily activities, compiled by the ALJ through a combination of Plaintiff's testimony and treatment records — including various chores, Plaintiff's personal grooming, participation in online classes, driving, use of public transportation, and some childcare — are sufficiently supported by the record.  *See* Tr. at 19–20.  Furthermore, as the Commissioner argues, Plaintiff reported inconsistencies in her ability to perform these activities; for example, Plaintiff informed Dr. Lorensen that she could shop, but three days earlier, she informed Dr. Dennis Noia, a consultative psychologist, that she needed assistance for this same task.  *Compare id.* at 279, *with id.* at 283.  Therefore, the Court finds that the ALJ accurately considered Plaintiff's daily activities for the purposes of her consistency determination.

   Plaintiff also argues that her participation in daily activities does not establish that she could engage in activities on a continuous basis.  An ALJ "may rely on Plaintiff's activities of daily living in weighing opinion evidence in the record."  *Coyle v. Comm'r of Soc. Sec.*, No. 5:17-CV-0924, 2018 WL 3559073, *7 (N.D.N.Y. July 24, 2018) (citing *Krull v. Colvin*, 669 Fed. Appx. 31, 32 (2d Cir. 2016)); *see also Lamorey v. Barnhart*, 158 Fed. Appx. 361, 363 (2d Cir. 2006) ("[I]t is entirely appropriate for an ALJ to consider a claimant's daily activities in assessing her credibility and capacity to perform work-related activities") (citing 20 C.F.R. § 404.1529(c)(3)(i)).  However, an ALJ may not "rely almost exclusively on [Plaintiff's daily activities] in her assessment of opinion evidence and ultimate [RFC] determination and . . . not

discuss other medical evidence in the record or treatment notations." *Coyle*, 2018 WL 3559073, at *7. While Plaintiff contends that the ALJ "relied primarily upon Plaintiff's activities as not supporting her allegations," Dkt. No. 12 at 24, the ALJ specifically outlined her reasons for finding Plaintiff's subjective complaints to be inconsistent, which were not limited to Plaintiff's daily activities. *See* Tr. at 19–20.

The ALJ did not determine that Plaintiff was capable of performing sustained work activity based solely on her testimony of activities of daily living. Instead, the ALJ noted inconsistencies between these reported activities and Plaintiff's claims of extremely disabling symptoms that would unlikely permit even the level of activity Plaintiff reported. *See* Tr. at 19–20; *see also Tammie S. v. Berryhill*, No. 3:18-CV-174, 2019 WL 859263, *13 (N.D.N.Y. Feb. 22, 2019) ("The [activities of daily living] were one factor the ALJ considered in assessing plaintiff's complaints of pain and credibility as the ALJ also considered the medical records from [plaintiff's doctor and a consultative examiner]. In sum, the ALJ properly considered plaintiff's [activities of daily living] and assessed them in combination with the other record evidence"). Nevertheless, even if the Court did agree with Plaintiff that the ALJ improperly considered Plaintiff's daily activities, the ALJ's treatment of Plaintiff's subjective statements of pain with regards to her daily activities "does not provide a basis for reversal because there is substantial evidence in the record to support the conclusion that plaintiff's pain was not so severe as to preclude gainful employment." *Polidoro v. Apfel*, No. 98 CIV. 2071, 1999 WL 203350, *9 (S.D.N.Y. Apr. 12, 1999).

As such, the Court finds that the ALJ properly considered Plaintiff's daily activities. Based on the foregoing, the Court finds that the ALJ's decision finding Plaintiff's subjective complaints to be inconsistent was supported by substantial evidence.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in the Commissioner's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 20, 2020
     Albany, New York

Mae A. D'Agostino
U.S. District Judge

22